IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY M. JONES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  CIVIL ACTION NO. 1:11cv989-WC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Plaintiff, Kimberly M. Jones, applied for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 *et seq*. Her application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c),

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 8). Based on the court's review of the record and the briefs of the parties, the court concludes that the decision of the Commissioner must be reversed and this case remanded.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was thirty-four years old at the time she filed her application and had a limited education. Tr. 18. Plaintiff's past relevant work experience was as a "security guard." *Id*. Following the administrative hearing, and employing the five-step process, the ALJ found that Plaintiff has "not engaged in substantial gainful activity since March 24, 2009, the application date." (Step 1) Tr. 13. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "borderline intellectual functioning, major depression (mild), bipolar disease, panic disorder, obsessive-compulsive disorder, lumbar degenerative disc disease, endometriosis, obesity, and scoliosis ." Tr. 13. At Step 3, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." Tr. 14. Next, the ALJ found that Plaintiff "has the residual functional capacity to perform light work . . . except she is unable to crawl or climb ladders, ropes, or scaffolds. She can only occasionally crouch and kneel. She is limited to understanding, remembering, and carrying out simple one and two-step instructions and tasks. She is limited to occasional interaction with the general public. She is limited to a work setting that has only occasional changes." Tr. 15-16. The ALJ then found that Plaintiff "is unable to perform any past relevant work." (Step 4) Tr. 18. After considering Plaintiff's "age education, work experience, and [RFC]" and consulting with a VE, the ALJ determined that "there are jobs that exist in significant numbers in the national

economy" that she could perform. Tr. 19. Thus, the ALJ determined that Plaintiff "has not been under a disability . . . since March 24, 2009, the date the application was filed." *Id*.

## IV.  PLAINTIFF'S CLAIMS

Plaintiff presents two issues for this court's consideration in review of the ALJ's decision: whether "the new and material evidence warrants remand"; and whether "the ALJ erred by failing to order a consultative examination." Pl.'s Br. (Doc. 13) at 6 & 11. Because the court determines that remand is necessary as to Plaintiff's first claim, the court declines to decide the second one.

## V.  DISCUSSION

Plaintiff argues that there is new and material evidence in the form of IQ and Vineland testing that requires this case be remanded to the ALJ for further consideration. Pl.'s Br. (Doc. 13) at 7. The evidence to which Plaintiff points is a full scale IQ score of 66 on a test performed by Dr. George and a Vineland adaptive behavior composite score of 52. *Id*. at 8. Plaintiff asserts that these scores establish that she meets the listing of Mental Retardation as set forth in Listing 12.05(C), which states in relevant part as follows:

> **12.05 *Mental Retardation***: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function; . . .

6

20 C.F.R. 404, subpt. P, app. 1, § 12.05C.

Sentence six of § 405(g) states that remand is appropriate if Plaintiff shows that: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable probability that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); *see also* 42 U.S.C. § 405(g) (sentence six).

### A.     New and Material

The evidence here was gathered after the Appeals Council rendered their decision, so it is "new." As to materiality, the court finds that the IQ score is material. "Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). In addition to the Vineyard testing, "there is a rebuttable presumption that a claimant manifested deficits in adaptive functioning before the age of 22 if the claimant established a valid IQ score between 60-70." *Grant v. Astrue*, 255 F. App'x 374, 375 (11th Cir. 2007) (citing *Hodges v. Barnhart*, 276 F.3d 1265, 1266 & 1268-69 (11th Cir. 2001)). *See also Monroe v. Comm'r of Soc. Sec.*, 2013 WL 28374, at *2 (11th Cir. Jan. 3, 2013).

The difficulty in this case is that the record includes a seemingly inconsistent full scale IQ score of 79, which was achieved when Plaintiff was 16. Tr. 131. There is also evidence

of Plaintiff's adaptive functioning. Both Defendant and Plaintiff request this court re-weigh the new evidence against the old.[5]

Plaintiff has now presented an IQ score of between 60-70. As stated above, this has created a rebuttable presumption that she manifested deficits in adaptive functioning before the age of 22. In addition, the record supports her claim that she manifested deficits in adaptive functioning prior to the age of 22.[6] Because she has shown "deficits in adaptive functioning" and the ALJ found she suffered from "severe impairments," as defined in Step 2 of the ALJ's evaluation, then subparagraph C's requirement of an "additional and significant work related limitation of function is satisfied." *See Carroll v. Astrue*, Case No. 1:08cv74-SRW, 2009 WL 1708073, at *1 n.2 (M.D. Ala. June 17, 2009) (citing 65 Fed. Reg. 50746 at 50754 (Aug. 21, 2000) ("In final listing 12.05C . . . we used the word 'an' before the word 'additional' to clarify that the additional impairment must be 'severe' in order to establish 'an additional and significant work-related limitation of function.'") and 50772 ("We have always intended the phrase [significant work-related limitation of function] to mean that the other impairment is a 'severe' impairment, as defined in §§ 404.1520(c) and 416.920(c).")). Thus, the court finds that the new evidence is material, as there is a

---

[5] Plaintiff contends that the earlier IQ scores took place during her "developmental period" and are thus, less reliable, while Defendant defends the earlier scores and points the court to other indications of adaptive functioning in the record.

[6] The Commissioner here, as well as in other cases, seems to conflate the test for a diagnosis of mental retardation under the DSM and a finding that Listing 12.05(C) has been met. The DSM requires "significant deficits" in adaptive behavior. Whereas, the introductory paragraph of 12.05 simply requires "deficits." The severity question comes into play in sections (A)-(D), with elements of adaptive behavior dealt with in (A) and (D).

"reasonable probability that it would change the administrative result." However, the court is not in any position to re-weigh the medical evidence of record against the new evidence to determine whether Plaintiff meets the listing. That is, the new evidence must be evaluated and weighed against the entire record for a determination of the significance and value of the medical opinion.

### B.     *Good Cause*

Plaintiff argues there is good cause for her failure to submit the evidence at the administrative level because the evidence was not available at that time. Indeed, the parties agree the evaluation was not performed and Dr. George's report was not generated until after the Appeals Council had declined review.

While "[t]he good cause requirement was designed to avoid the danger of encouraging claimants to seek after-acquired evidence," *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir. 1987) (internal quotation omitted), "under Eleventh Circuit law, it appears that establishing 'good cause' requires no more than a showing that the evidence did not exist until after the conclusion of the administrative proceedings." *Mitchell v. Apfel*, WL 33100499, at *2 (M.D. Ala. 1999).

Accordingly, the court finds that the newly acquired evidence is material and good cause exists for its failure to be presented at the administrative level and remand pursuant to sentence six of § 405(g) is appropriate.

**VI.    CONCLUSION**

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this case is REMANDED to the Commissioner for proceedings consistent with this opinion.[7]

Done this 6th day of March, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

---

[7] The court observes that with entry of this sentence six remand, it "does not rule in any way as to the correctness of the administrative determination." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Thus, under sentence six, a "remand is not a final judgment under the [Equal Access to Justice Act ("EAJA")], and the window for filing an EAJA application does not open until judgment is entered in the district court following completion of the remand proceedings." *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996).